**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JANICE VINSON MATTHEWS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  H-14-1825 |
| | § | |
| | § | |
| MEGAN J. BRENNAN, Postmaster | § | |
| General, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Janice Matthews sued the United States Postal Service, alleging that it discriminated against her on the basis of disability and retaliated against her for filing civil-rights complaints.  The Postal Service has moved for summary judgment on some claims and asked the court to stay the remaining claims until a class action pending in another forum is resolved.  Ms. Matthews responded, and the Postal Service replied.  (Docket Entries No. 98, 103, 109).  Based on the motions, the summary judgment record, and the applicable law, the Postal Service's motion for partial summary judgment and to stay the remaining claims, (Docket Entry No. 98), is granted.  The reasons for these rulings are set out in detail below.

**I.      Background**

Ms. Matthews has worked for the Postal Service since 1982.  (Docket Entry No. 98-3 at 6[1]).  She characterizes herself as a "Protector[] of Civil Rights" who has filed "more than 200"

---

[1] For clarity and consistency, page-number references throughout this opinion are to the electronic docket-stamped page number on the documents rather than to the internal page numbers.

complaints with the Post Office Equal Employment Opportunity Office and "more than 300" grievances under the letter carrier's union dispute-resolution process. (Docket Entry No. 103 at 16, 24).

In 1998 and again in 2004, Ms. Matthews injured her back and hand while working. She was also diagnosed with work-related depression. (*Id.* at 1). After partially recovering from these maladies, Ms. Matthews worked in a limited-duty capacity on a four-hour shift dictated by her medical requirements. (Docket Entry No. 103-1 at 7). In 2006, she began working at the Postal Service's James Griffith Station in northwest Houston. In 2007, as part of the Postal Service's "National Reassessment Process," Postal Service Area Manager Jose Ayala reassigned all limited-duty letter carriers at the James Griffith Station, including Ms. Matthews, to the Houston General Post Office. (Docket Entry No. 98-8 at 4-5).

On April 18, 2007, the Postal Service notified Ms. Matthews that, effective April 21, 2007, she was among those assigned to the General Post Office. (Docket Entry No. 98-8 at 6). On April 30, the Postal Service presented her with an official modified job offer for her new General Post Office assignment. The offer was for an eight-hour shift rather than the four-hour shift permitted by her medical restrictions. (*Id.* at 1). Sheila Thomas, the Acting Manager for Customer Services at the General Post Office, told Ms. Matthews that there was no other job available. Ms. Thomas sent Ms. Matthews home for the day without putting her in a pay status for that day. (Docket Entry No. 98-6 at 5). Ms. Thomas testified that she did not have authority to reassign Ms. Matthews to the James Griffith Station. (*Id.*).

On May 3, 2007, Ms. Thomas sent Postal Service employee Bob Sutkoff, who was the Injury Compensation Specialist for Ms. Matthews's case, a corrected modified job offer for Ms. Matthews.

This offer correctly reflected her four-hour shift restriction. Mr. Sutkoff called Ms. Matthews and told her about the corrected offer, but Ms. Matthews demanded written confirmation that the offer tracked her medical limits. The Postal Service mailed her a copy of the offer, which she received on June 15, 2007.

On May 10, 2007—after Ms. Matthews's conversation with Mr. Sutkoff but before she received a written copy of the modified job offer—her treating psychiatrist, Dr. Rahn Bailey, sent the Postal Service a medical evaluation note stating that Ms. "Matthews is unable to return to gainful work due to general medical condition and/or psychological well-being." (Docket Entry No. 98-3 at 1). When Ms. Matthews received the modified job offer on June 15, 2007, she checked the box to indicate that she accepted the offer, but, in a note, stated that she did so "under protest and distress" because she could not report for work at all without her doctor giving her a medical release. (Docket Entry No. 98-8 at 2).

Between May 2007 and November 2011, Ms. Matthews provided a series of doctor's notes stating that she was unable to work. (Docket Entries No. 98-3 at 3, 98-5 at 1-2). The November 2011 note stated that the doctor could not determine when Ms. Matthews would be able to return to work, that in no event could her return be sooner than May 31, 2012, and that she would be reevaluated regularly in the interim. (Docket Entry No. 98-5 at 1).

In December 2011, Mr. Sutkoff initiated "administrative separation" proceedings under the Postal Service's Employee and Labor Relations Manual. (*Id.* at 13). Under the Manual's guidelines, the Postal Service may administratively separate employees who have been unable to work for more than a year and are not likely to return to work in the near future. (Docket Entry No. 98-8 at 22). The Postal Service's headquarters approved the separation. Houston District Labor Relations

Manager Rodney Thomas decided that Ms. Matthews should be administratively separated because she had been unable to work for more than four years and was not released to return to work in the near future, making separation proper under Postal Service rules. He notified Ms. Matthews of the separation decision in a letter dated January 26, 2012. (Docket Entry No. 98-4 at 20).

In September 2007, Ms. Matthews filed the first of the two formal complaints that are the basis of the current lawsuit. (Docket Entry No. 98-5 at 2). This complaint claimed disability discrimination and retaliation for protected activity based on: (1) the April 2007 cancellation of Ms. Matthews's modified assignment at the James Griffith Station; (2) the April 2007 refusal to allow Ms. Matthews to "get on the clock" for the day and to give her a job offer that met her medical restrictions; (3) the May 30 job offer, which Ms. Matthews characterizes as "bogus" because it did not include certain job details; and (4) the June 2007 cancellation of a meeting between Ms. Matthews and her Equal Employment Opportunity Office representative. The Post Office Equal Employment Opportunity Office accepted the first three claims for investigation and rejected the fourth. (*Id.* at 6).

In another case, an administrative law judge at the Equal Employment Opportunity Commission, in May 2008, certified a class of "all permanent rehabilitation employees and limited duty employees" of the Postal Service who were "subjected to the [National Reassessment Plan]," allegedly in violation of the Rehabilitation Act. Because Ms. Matthews's disability-discrimination claim was subsumed in the class action, the EEOC held those claims in abeyance and addressed only her retaliation claims. The administrative law judge rejected those claims and the EEOC Office of Federal Operations affirmed that decision. (*Id.* at 38).

Ms. Matthews filed a second complaint in 2012. That complaint charged that the decision

to administratively separate her and many of the actions related to that decision were discriminatory and retaliatory. (Docket Entry No. 98-1 at 17). The Postal Service accepted the complaint for investigation. (*Id.* at 16). The EEOC administrative law judge's investigation found no evidence of discrimination and rejected the claim. The Office of Federal Operations affirmed that decision. (Docket Entry No. 98-5 at 34).

Ms. Matthews filed two separate suits based on the administrative complaints. The lawsuits were consolidated into this action. After discovery, the Postal Service filed this motion for partial summary judgment and to stay the remaining claims.

## II.     The Legal Standards

### A.        The Summary Judgment Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp.*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

Although federal courts "construe pro se filings liberally, we still require pro se parties to

fundamentally 'abide by the rules that govern the federal courts.'" *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), *as revised* (Sept. 18, 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x. 419, 421 (5th Cir. 2013).  Even if evidence exists in the summary judgment record, if the plaintiff (whether pro se or not) does not explicitly reference the evidence in her brief in opposition to summary judgment, "that evidence is not properly before the district court." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)).

### B.    Disability Discrimination and Retaliation Under the Rehabilitation Act

A federal employee's remedy for employment-related disability discrimination or retaliation is a suit under the Rehabilitation Act, rather than the Americans With Disability Act or Title VII. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (the ADA does not apply to the federal government and Title VII does not prohibit disability discrimination).[2]  That difference is minor, because disability-discrimination and retaliation claims under the Rehabilitation Act are evaluated using the same standards as claims under the Americans With Disabilities Act.  *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).  Disability-discrimination and retaliation claims under the ADA are analyzed using a modified version of the same framework used to evaluate employment-discrimination claims under Title VII.  *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000).

When a plaintiff uses indirect or circumstantial evidence to prove discrimination or retaliation, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

---

[2]  Therefore, Ms. Matthews' claims under the ADA and Title VII fail as a matter of law.  This does not substantially change the analysis, as the parties' evidence and arguments apply with equal force in the Rehabilitation Act context.

(1973), as modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc*., 376 F.3d 305 (5th Cir. 2004), applies. *See also E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). Under the modified *McDonnell Douglas* approach, the plaintiff has the initial burden of making a prima facie showing of discrimination or retaliation. *Abarca v. Metro. Transit Auth*., 404 F.3d 938, 941 (5th Cir. 2005); *Rachid,* 376 F.3d at 312. The elements of a prima facie showing of discrimination are that the plaintiff: (1) is disabled, has a record of having a disability, or is regarded as disabled, (2) is qualified for her job, (3) was subjected to an adverse employment action on account of her disability or the perception of her disability, and (4) was replaced by or treated less favorably than similarly situated nondisabled employees. *Chevron*, 570 F.3d at 615 (citing *McInnis*, 570 F.3d at 615). A similarly situated employee—a comparator—is one who is in all respects similar to the plaintiff, save for the comparator's nonmembership in the plaintiff's protected class. The comparator must have "nearly identical" characteristics to the plaintiff, including job title and duties, supervisors, and comparable work histories of rule violations or discipline. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). To make a prima facie showing of retaliation, the plaintiff must show that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the protected act and the adverse action." *Cohen v. Univ. of Texas Health Sci. Ctr.*, 557 F. App'x 273, 277-78 (5th Cir. 2014).

If a plaintiff makes a prima facie showing of discrimination or retaliation, the burden shifts to the defendant employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Cullwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006). If a defendant articulates a legitimate reason for the decision, the presumption of discrimination or

retaliation dissolves.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000);  *Chevron*, 570 F.3d at 615 n.6.  The plaintiff must then identify or offer record evidence to create a factual dispute material to deciding whether "the defendant's reason is not true, but is instead a pretext for discrimination . . . ."  *Rachid*, 376 F.3d at 312 (internal quotation and alteration marks omitted).  In a discrimination case, but not in a retaliation case, the plaintiff survives summary judgment by showing "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  *Id.*  Mixed-motive analysis is not appropriate in retaliation cases, which must be proved by but-for causation.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

In a mixed-motive discrimination case, if the plaintiff shows that illegal discrimination was a motivating factor in the challenged employment decision, the defendant must respond with evidence showing that the same employment decision would have been made regardless of discriminatory animus.  *Rachid*, 376 F.3d at 312.  The plaintiff has the ultimate burden of showing a genuine dispute of material fact as to whether the defendant discriminated against her on the basis of her membership in the protected class.  *Reeves*, 530 U.S. at 143.

## III.  Analysis

Ms. Matthews's 2007 retaliation claims and 2012 discrimination and retaliation claims fail as a matter of law because Ms. Matthews has neither identified nor submitted record evidence satisfying her summary judgment burden.  Throughout her brief, Ms. Matthews insists that, when she is given "the opportunity to present ALL the witnesses and ALL the evidences to a fair just audience of a Jury," (Docket Entry No. 103 at 30), she will be able to demonstrate that the Postal Service discriminated against her.  But Ms. Matthews's burden at summary judgment is to produce

or identify evidence in the summary judgment record that would be a legally sufficient basis for a jury to return a verdict in her favor. Put another way, she must point to evidence that would support an inference of the discrimination or retaliation she alleges. Promises to produce the evidence later are not enough. Ms. Matthews's failure to point to adequate summary judgment evidence to raise a factual dispute material to deciding her claims dooms her suit.

The reasons for this conclusion are explained in detail below.

### A.      The Allegations of Retaliation and Discrimination in 2007

Ms. Matthews alleges that the Postal Service took four adverse actions against her in 2007 that were motivated by disability discrimination and retaliation for her previous complaints about civil rights violations. The alleged actions are that:

1.     "on April 18, 2007," the Postal Service "canceled/terminated" her "limited duty assignment" at the James Griffith Station;

2.     "on April 30, 2007," the Postal Service "refused to allow" her "to get on the clock, offered her a limited-duty assignment that violated her medical work restrictions for her on-the-job injuries, spoke to her totally unprofessionally, would not let her work any hours, would not put her in a pay status even after detaining her over 20 minutes," and "sent her home refusing to release her back to" the James Griffith Station;

3.     "on June 8, 2007," the Postal Service "canceled her scheduled EEO appointment with representation by a United States Postal Service employee"; and

4.     "on June 15, 2007," the Postal Service "forced her to accept a bogus limited duty assignment which was back dated and did not post or state her status, level, step, and salary."

(Docket Entry No. 1).

The first issue is whether to stay Ms. Matthews's 2007 disability-discrimination claims stemming from her reassignment under the National Reassessment Plan until the resolution of the class action lawsuit pending before the EEOC. The EEOC rules do not allow individual class members to opt out of a certified class to pursue an individual claim while the class action lawsuit

is pending.  *See Wade v. Donahoe*, No. CIV.A. 11-3795, 2012 WL 3844380, at *13 (E.D. Pa. Sept. 4, 2012) (EEOC class actions are non-opt-out under 29 C.F.R. § 1614.204 and EEOC Management Directive 110, Chapter 8, Part V.C.).    Allowing Ms. Matthews to litigate her disability-discrimination claims stemming from her National Reassessment Plan reassignment on an individual basis in this court would effectively allow her to opt out of the EEOC class action, in violation of the agency regulations and rules.  Allowing her to proceed as an individual at this juncture would duplicate the class action, wasting judicial resources and risking inconsistent results.  To avoid limitations problems, this court will stay (rather than dismiss) Ms. Matthews's 2007 disability discrimination claims pending the resolution of the EEOC class action litigation.

Ms. Matthews's retaliation claims are not included in the class action.  They are properly presented in this case and are properly before this court on the Postal Service's motion for partial summary judgment.[3] Ms. Matthews has not made a prima facie showing of retaliation for any of the four actions she challenges, because she has not put forward or pointed to record evidence of a causal connection between her protected activity—filing civil rights complaints—and the adverse employment actions she challenges.  The only argument and evidence on this point discussed in Ms. Matthews's brief is the testimony of Sheila Smith, the former manager of the James Griffith Station.

---

[3] The court does not address the Postal Service's argument that Ms. Matthews is judicially estopped from asserting her 2007 claims because she did not disclose them in her bankruptcy proceeding.  Whether Ms. Matthews is estopped turns on an apparently unresolved question of bankruptcy law: whether a Chapter 13 debtor's duty of disclosure ends on plan confirmation or continues until discharge.  According to the bankruptcy case docket sheet that is in the summary-judgment evidence, Ms. Matthews's plan was confirmed in 2003 (before the occurrences underlying the 2007 claims) but her debts were not discharged until 2008 (after those occurrences).  Research suggests that the Fifth Circuit has recognized, but not resolved, an apparent contradiction in the Bankruptcy Code that leaves a Chapter 13 debtor's duty to disclose assets acquired between confirmation and discharge unclear.  *In re Flugence*, 738 F.3d 126, 129-30 (5th Cir. 2013). Without significantly more information about Ms. Matthews's bankruptcy proceeding—including information on the terms of her confirmed Chapter 13 plan—the court is not persuaded that the equities favor application of judicial estoppel here.

Ms. Matthews identifies three aspects of Ms. Smith's testimony as evidence of a causal connection between her protected activity and the adverse actions.

Ms. Matthews first points to testimony by Ms. Smith indicating that she, Mr. Ayala, and other Houston-area Postal Service managers were aware of Ms. Matthews's frequent EEO activity. (Docket Entry No. 103-1 at 27-28). Second, Ms. Matthews points to Ms. Smith's testimony that Mr. Ayala told her to "stay out of" Ms. Matthews's efforts to return to work at the James Griffith Station. (*Id.* at 30). Third, Ms. Matthews points to Ms. Smith's testimony that, although she stopped working at the James Griffith Station early in 2007, she returned sometime in the "latter part of 2007" and saw that all of the employees who had been reassigned to the General Post Office under the National Reassessment Plan were back working at the Station. (Docket Entry No. 103-2 at 7-8).

That Mr. Ayala and others knew that Ms. Matthews had been involved in previous EEO proceedings is not sufficient to support a causal link between those proceedings and the adverse actions that she challenges. In general, an employer's knowledge of protected activity—even recent protected activity—cannot alone satisfy the causation element of a prima facie showing. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 443 (5th Cir. 2007) (collecting cases rejecting causation based on the time elapsed between when the employer learns of the employee's protected activity and the employer's adverse action).

In limited circumstances, an employer's knowledge alone can support causation and make a prima facie case. In those cases, the employer takes the challenged adverse action shortly after learning that the employee has engaged in protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). The record evidence here is not close to that fact pattern. The temporal proximity supporting a prima facie showing of retaliation is not present. This is not a case

in which Ms. Matthews's managers first learned of repeated protected activity and soon thereafter took action against her. The record shows that Ms. Matthews had a long history of protected activity and that Mr. Ayala and other managers had long been aware of that history. An employer's longstanding knowledge of protected activity alone is not sufficient to support the causal link between that activity and the employer's challenged adverse actions. *Breeden*, 532 U.S. at 273.

Ms. Smith's testimony that Mr. Ayala told her to "stay out of" Ms. Matthews's efforts to return to the James Griffith Station does not, on its own or in combination with Ms. Smith's other testimony and other summary judgment evidence, suggest that the actions Ms. Matthews complains of had anything to do with her protected activity. Ms. Smith's testimony that sometime in the "latter" part of 2007, she saw employees who had been reassigned to the General Post Office back at work at the James Griffith Station does not show causation. Ms. Matthews does not present argument or point to evidence that these employees were comparable to her in work history or other respects but had not engaged in protected activity before their return to the James Griffith Station. Absent that evidence, the presence of these employees at the Station does not suggest that Ms. Matthews was treated differently due to her protected activity. Even if the court assumes that these employees were comparable to Ms. Matthews, she submitted a doctor's note on May 10, 2007 stating that her medical condition made her unable to work. (Docket Entry No. 98-3 at 1). The fact that Ms. Matthews was not among those assigned back to work at the James Griffith Station in the "latter" part of 2007 cannot support an inference that the earlier adverse actions were causally connected to her protected activity. Ms. Matthews was not working at all and could not work in the foreseeable future. This testimony fails to support a causal connection between Ms. Matthews's protected activity and the 2007 adverse actions that she challenges.

Because Ms. Matthews has not put forward or pointed to evidence showing a causal connection between the adverse action she challenges and her protected activity, she has not made a prima facie showing of retaliation.[4] Nothing in the summary judgment record suggests that there is any connection between Ms. Matthews's protected activities and the actions she challenges.

Even assuming that Ms. Matthews had made a prima facie showing of retaliation on the first two claims, she has failed to identify summary judgment evidence supporting an inference that the Postal Service's neutral, nonretaliatory reasons for taking the actions are pretextual and that retaliation caused the adverse actions.[5]

The Postal Service contends that it reassigned Ms. Matthews—and all other limited-duty workers at the James Griffith Station—to the General Post Office as part of the National

---

[4] Ms. Matthews's third and fourth claims—the cancellation of her EEO appointment and the "bogus" offer that did not include her step, salary, and other information—also fail for other reasons. The complaint about the cancellation of an EEO appointment fails because Ms. Matthews does not identify any evidence that this event occurred. Moreover, there is no argument or evidence presented for why canceling the meeting was materially adverse. Ms. Matthews does not present or identify any evidence of who her EEO representative was, when she was scheduled to meet with him or her, what action the Postal Service took to cancel the meeting or otherwise prevent her representative from assisting her, or what harm that action caused her. Ms. Matthews's brief makes only vague accusations and conclusory claims about this issue. Even if she had presented or pointed to additional evidence, there does not appear to be a discrimination or retaliation cause of action for a federal employee based on delay or interference in the EEO investigative process. Ms. Matthews's claim fails as a matter of law. *Daniels v. Caldera*, 237 F.3d 631, 2000 WL 1701699 at *3 (5th Cir. 2000) (unpublished table op.) (citing *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000)); *Diggs v. Potter*, 700 F. Supp. 2d 20, 46 (D.D.C. 2010); *Keeley v. Small*, 391 F. Supp. 2d 30, 45 (D.D.C. 2005).

The complaint about the "bogus" offer fails because there is no argument or evidence showing that the Postal Service's initial action had a materially adverse effect on Ms. Matthews's employment. Ms. Matthews has not explained or pointed to evidence showing how or why the omission of her status, level, step, or salary from the offer—an apparent clerical error—could harm her. When the offer was sent it was in line with Ms. Matthews's medical requirements. There is no indication that the Postal Service attempted to force Ms. Matthews to accept the offer after it received Dr. Bailey's note stating that she could not work at all. Receipt of a job offer that, through clerical oversight, omits customarily included information is a paradigmatic example of a mere annoyance or slight that does not rise to the level of a material adverse event.

[5] The Postal Service's summary judgment brief does not discuss neutral, nonretaliatory reasons for cancelling the EEO appointment or sending a job offer that omitted information about Ms. Matthews's rank and salary. That does not affect the outcome here. Neither action is a sufficient basis for a retaliation claim. *See* note 4, *supra*.

Reassessment Program, as a cost-saving measure. The Postal Service cites internal emails showing Area Manager Joseph Ayala, General Post Office Customer Services Manager Sheila Thomas, and other managers discussing the fact that all limited-duty carriers would be reassigned and the hour and cost savings that would result from the reassignments. (Docket Entry No. 98-8 at 4-5; 10). The Postal Service contends that the written job offer presented to Ms. Matthews on April 30, 2007 did not accurately track her medical requirements as a result of inadvertence and clerical mistake, but that, three days later, Sheila Thomas faxed Bob Sutkoff (Ms. Matthews's Injury Compensation Specialist) a corrected job offer that accurately reflected her four-hour-shift medical restriction. At Ms. Matthews's request, Mr. Sutkoff mailed her a copy of the modified offer. (*Id.* at 7-8). Sheila Thomas testified that Ms. Matthews was not allowed to get "on the clock" and in a pay status on April 30 at the General Post Office because she had rejected the formal job offer. Ms. Thomas had no other shift available to offer her. Given Ms. Matthews's restrictions, Ms. Thomas could not put her on a different shift or send her back to the James Griffith Station. (Docket Entry No. 98-6 at 5). These explanations are sufficient to shift the burden back to Ms. Matthews.

Ms. Matthews does not present or point to any summary judgment evidence creating a genuine factual dispute material to deciding whether these reasons are pretextual. Ms. Matthews repeatedly asserts that the various managers involved—most frequently Ms. Thomas and Mr. Ayala—acted with retaliatory intent, but does not cite evidence supporting that inference. Ms. Matthews's subjective impressions, unsupported by record evidence supporting an inference that retaliation was the but-for cause of the Postal Service's actions, are not sufficient. "Conclusory statements, unsubstantiated assertions, and speculation are not substitutes for specific facts showing that a genuine issue of material fact exists." *Quiros v. Wal-Mart Stores, Inc.*, No. 5:12-CV-177-C,

2014 WL 12531507, at *2 (N.D. Tex. Jan. 6, 2014).

Ms. Matthews has not met her burden under the *McDonnell Douglas* framework. Her retaliation claims arising from the 2007 employment actions fail.

**B      The 2012 claim**

Ms. Matthews alleges that the Postal Service discriminated against her on the basis of disability and retaliated against her for engaging in protected activity when it "administratively separated" her in 2012. She alleges that the following actions are unlawful disability discrimination and retaliation:

1.      "on February 01, 2012," the Postal Service "issued a Notice of Separation effective on 02-17-2012 because of the plaintiff's 'compensable injury,' also stating 'for more than one year have been continuously absent from duty'";

2.      "on February 02, 2012," the Postal Service "attempted to force the plaintiff into a Medical Disability Retirement without allowing the other alternatives or opportunities available to other injured workers";

3.      "on March 06, 2012," Postal Service employees "provided fraudulent information to influence USPS Headquarters' approval" of the separation;

4.      "on May 08, 12, 14, and 17, 2012," the Postal Service "refused and or failed to allow the plaintiff to have Official EEO time with her representative to process the Formal Complaint . . . associated with this charge,"

5.      "on May 20, 2012" the Postal Service "forced the plaintiff to go to the home of the USPS-EEO on Sunday to completed the Formal Complaint in a timely manner";

6.      "on May 21, 2012," the Postal Service "made no attempts to stop, correct or justify these acts

16

discrimination and/or offer or request an extension of time";

7.    "on July 10, 2012," the Postal Service "notified the plaintiff of the 'required actions' for this forced separation with 'deadlines' that had already expired";

8.    "on July 10, 2012," the Postal Service "send the 'Agency Response Regarding Allegation of Dissatisfaction with Processing of Pending Complaint' dismissing the plaintiff's complaint without outlining her appal rights, conducted an inquiry without questioning her or her USPS-EEO representative, violated the Laws listed in Pub.133, denied the plaintiff employment status and rights, delayed the process for over two months in order to discourage participation in the EEO programs and to continue the acts of Discrimination by the USPS"; and

9.    "at the USPS recommendations up and to April 24, 2014, the EEOC continually denied the plaintiff's appeals and request for reconsideration showing favor to the Agency/Defendant/his representative, even when they did not respond, denying the plaintiff the opportunity given the Law to establishing a prima facie case of unlawful discrimination."

(No. 14-cv-2131, Docket Entry No. 1, at 3-4).

Many of these claims are not even mentioned in Ms. Matthews's summary judgment brief, or are mentioned only in passing and without any reference to evidence in the summary judgment record. Ms. Matthews's brief does not discuss or cite evidence supporting her second, fifth, sixth, seventh, or eighth allegations of discriminatory or retaliatory conduct. The brief mentions claim number four, alleging that the Postal Service refused to allow Ms. Matthews's EEO representative to have "official EEO time," but Ms. Matthews does not point to summary judgment evidence

17

showing that this incident occurred, that it was materially adverse, or that she was treated differently from other employees who did not have disabilities or histories of protected activity. Ms. Matthews has not satisfied her initial burden of a prima facie showing of discrimination or retaliation as to claims number two, four, five, six, seven, eight, or nine.

The claims relating to the procedures, investigation, and outcome of the EEOC proceedings underlying this suit—claims four, five, six, eight, and nine—are not actionable for another reason as well. There is no discrimination or retaliation cause of action for a federal employee for a federal agency employer's allegedly improper handling of an EEO investigation or adjudication. *Daniels*, 2000 WL 1701699 at *3 (citing *Jordan*, 205 F.3d at 342); *Diggs*, 700 F. Supp. 2d at 46; *Keeley*, 391 F. Supp. 2d at 45 (D.D.C. 2005).

Ms. Matthews's first and third claims require more detailed discussion. The first claim is that the Postal Service engaged in discrimination and retaliation when it administratively separated Ms. Matthews in 2012. This claim fails because Ms. Matthews has not made a prima facie showing of discrimination or retaliation. First, a critical element of the prima facie showing of disability discrimination is that the employee was qualified for the job. Ms. Matthews was not. She repeatedly submitted, over the course of several years, doctor's notes stating that she was unable to work and would not be able to return to work for the foreseeable future. (Docket Entries No. 98-3 at 1-3, 98-5 at 1-2). If undisputed facts show that a person is medically unable to work a particular job, that person is not qualified for that job. *E.g.*, *Juarez-Keith v. U.S. Foodservice, Inc.*, No. CIV.A. 3:02-CV-0090L, 2005 WL 548074, at *4 (N.D. Tex. Mar. 8, 2005), *aff'd sub nom. Juarez-Keith v. US Foodservice, Inc.*, 192 F. App'x 249 (5th Cir. 2006); *Coney v. Dallas Hous. Auth.*, No. CIV.A. 3-01-CV-2337-, 2003 WL 292167, at *5 (N.D. Tex. Feb. 7, 2003).

Second, Ms. Matthews has not identified other employees in "nearly identical" circumstances who were not administratively separated. Ms. Matthews does not present or point to evidence in the record that a comparable employee, who had not worked for medical reasons for more than four years and whose doctor stated would not be able to return to work in the near future, was not administratively separated. Ms. Matthews has not raised a factual dispute material to deciding whether she was treated less favorably than similarly situated employees outside her protected class.

Ms. Matthews has not made a prima facie showing of retaliation on her first claim for the same reasons identified earlier in relation to the 2007 claims. She fails to identify or point to evidence causally connecting the decision to administratively separate her to her protected activity. The only evidence that Ms. Matthews points to is the testimony by Sheila Smith discussed above. That evidence does not support an inference that retaliation was the but-for cause of the administrative separation. The retaliation claim also fails because even if Ms. Matthews had made a prima facie showing, she has not identified or submitted evidence showing that the Postal Service's nonretaliatory, neutral reason for the adverse action was pretextual. Ms. Matthews had been unable to work for several years and her doctor repeatedly represented that she was not and would not be able to work in the reasonably near future. The Postal Service administratively separated her under its regulations. *Fanning v. Potter*, 614 F.3d 845, 850-51 (8th Cir. 2010) (the Postal Service had articulated a nonretaliatory reason for administrative separation on nearly identical facts). Ms. Matthews has not presented evidence that would allow a reasonable jury to find that retaliation was the but-for cause for the administrative separation. Her claim fails.

Ms. Matthews's third claim—that Postal Service employees placed fraudulent information in her file and in the letter requesting permission to administratively separate her—is also

19

insufficient to support a claim for discrimination or retaliation. Ms. Matthews does not identify which statements were fraudulent or provide evidence to support that allegation. Even if she had presented evidence or arguments showing that some statements in the letter were fraudulent—and she has not, which is enough without more to grant summary judgment for the government on this issue—her claim would fail. The uncontroverted record evidence shows that Ms. Matthews had not worked in approximately four and a half years and that her doctor would not release her to work in the near future. Rodney Thomas, Houston District Labor Relations Manager, Yvonne Riddle, regional Manager of Health and Resource Management, and Linda DeCarlo, Director of Health and Safety in Washington, D.C., were all part of the chain of command signing off on the separation proposal. Each one gave a sworn statement that the reason for the separation was that Ms. Matthews had not worked in several years and her doctor stated that she would not be able to work in the near future, making separation proper under Postal Service rules. (Docket Entry Nos. 98-4 at 14, 32; 98-5 at 11).

Even if some of the statements in the original letter requesting permission for the administrative separation were fraudulent in some way, the fact on which every decisionmaker relied in approving the separation request—Ms. Matthews's long medical incapacitation and lack of a reasonably close return-to-work date—are undisputed based on the clear record evidence. Ms. Matthews has not identified any harm that she suffered as a result of vaguely alleged and unproven fraudulent statements in the separation materials.

Even if the decisionmakers had relied on some fraudulent statements in administratively separating her, Ms. Matthews's claim would still fail. When an employee alleges that an employer took an adverse action against her on the basis of false information, the question is whether the

employer had a good-faith basis to believe that the information was true and would justify the adverse action. *Lucas v. T–Mobile USA, Inc.*, No. CV H-15-2825, 2016 WL 6835094, at *6 (S.D. Tex. Nov. 21, 2016). Ms. Matthews has not identified arguments or evidence that would allow a reasonable jury to conclude that the Postal Service lacked a good-faith basis to believe that she had been medically unable to work for an extended period and was unlikely to return in the near future, making the administrative separation she challenges proper.

## IV.     Conclusion

Ms. Matthews's burden at summary judgment was to produce or point to evidence sufficient to allow a jury to find in her favor on her discrimination and retaliation claims. She did not do so. The Postal Service is entitled to summary judgment on the 2007 retaliation claims and the 2012 discrimination and retaliation claims. The 2007 discrimination claims remain, but they are stayed and this case is administratively closed pending resolution of the EEOC administrative class action. If the EEOC class action does not resolve Ms. Matthews's 2007 discrimination claim, the parties must file a motion to reinstate the claim to the active docket and for a status conference within 14 days after the class action is resolved.

The court has resolved all of the remaining claims in the case. There is no just reason for delay in entering a final judgment on the 2007 retaliation claim and the 2012 discrimination and retaliation claims. Final judgment for the Postal Service on the 2007 retaliation claim and the 2012 discrimination and retaliation claims will be entered by separate order.

SIGNED on May 11, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge